UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RYAN RACING, LLC,

        Plaintiff,

                                      Case No.  1:12-CV-488

v.

                                        HON. ROBERT HOLMES BELL

PAUL GENTILOZZI, et al.,

        Defendants.

_____/

## **O P I N I O N**

This is an action filed by Ryan Racing, LLC, to collect on a state court judgment against Defendant Rocketsports, Inc.  Defendants in this action include Rocketsports, Paul Gentilozzi, RSR Racing, LLC, and six real estate companies owned by Defendant Gentilozzi (the "Real Estate Defendants").[1]  This matter is before the Court on all Defendants' motions in limine to preclude expert reports (ECF Nos. 121, 130), Defendant RSR Racing, LLC's motion to dismiss Count 3 alleging successor liability, (ECF No. 142), Defendant Gentilozzi's motions to dismiss and for partial summary judgment on Count 4 alleging piercing the corporate veil (ECF Nos. 144 & 146), all Defendants' motion for partial summary judgment on Counts 1 and 2 alleging fraudulent transfer and conspiracy (ECF

---

[1]The Real Estate Defendants are Gentilozzi Real Estate and Management Company, Inc., d/b/a Gentilozzi Real Estate, Inc., Victor Development II, LLC, Atrium Partners, Westland Center Partners, 320 North Washington Square Partnership, and 3400 West Road, LLC.

Nos.149), and on Plaintiff's cross-motion for summary judgment on all four counts of its complaint (ECF No. 151).  For the reasons that follow, all of the motions will be denied.

## I.  FACTUAL BACKGROUND

Ryan Hunter-Reay is a professional race car driver who conducts his business activities through Plaintiff Ryan Racing, LLC.  Defendant Paul Gentilozzi is the sole owner of Defendant Rocketsports Racing, Inc. ("Rocketsports"), a race car team he formed in 1991. Gentilozzi was Rocketsports' sole owner.  In 2005, Hunter-Reay entered into a one-year race car driver agreement with Rocketsports.  Rocketsports terminated Hunter-Reay's driving contract prior to the end of the contract term.

On May 9, 2008, Ryan Racing, together with  Hunter-Reay and R&R Racing Enterprises LLC, filed a demand for arbitration against Rocketsports for breach of contract. (Arb. Demand, ECF No. 147-5; Afendoulis Decl. ¶ 3, ECF No. 152-4.)  The claimants alleged that Rocketsports breached the driver agreement by terminating Ryan prior to the end of the contract term, failing to provide  him with equipment and engineering support, and making false statements that were disparaging to Ryan's reputation.  (Afendoulis Decl. ¶ 4.) The arbitration took place over several days in June 2009.  (*Id.* at ¶ 6.)  On August 18, 2009, the arbitrator issued an award in favor of the claimants in the amount of $2,720,980.  (Arb. Award, ECF No. 152-3.)  On September 30, 2009, the Ingham County Circuit Court entered a judgment confirming the arbitration award in favor of Ryan Racing in the amount of $2,720,980 plus interest. *Ryan Racing, LLC v. Rocketsports, Inc.*, No. 09-1170-PZ (Ingham

2

Cnty. Cir. Ct.). (ECF No. 1-1.)

On April 15, 2009, Gentilozzi filed articles of organization with the state for a new limited liability company, RSR Racing, LLC ("RSR"). (Gentilozzi Dep. 175, ECF No. 159-1; RSR Arts. of Org., ECF No. 154-2.) On July 31, 2009, Rocketsports entered into an Asset Purchase Agreement ("APA") and transferred substantially all of Rocketsports' assets to RSR. (APA, ECF No. 150-1; Gentilozzi Dep. 176.) Pursuant to the APA, Rocketsports transferred $734,870 in property to RSR in exchange for RSR's assumption of $1,292,147 in liabilities. (APA, ECF No. 150-1.) RSR, like Rocketsports, is a race car team. RSR is owned by Gentilozzi and his two sons. Gentilozzi is the sole owner of Rocketsports and the majority owner of RSR. After selling its assets to RSR, Rocketsports ceased operations. (Gentilozzi Aff. ¶ 4, ECF No. 147-2.)

In addition to Rocketsports and RSR, Gentilozzi owns real estate businesses in the Lansing area, including Defendants 320 North Washington Square Partnership, 3400 West Road, LLC, Atrium Partners, Victor Development II, LLC, and Westland Center Partners. Defendant Gentilozzi also owns Defendant Gentilozzi Real Estate and Management Co., Inc. ("GRE"), a property management company that does the general ledger for Gentilozzi's various business interests. Gentilozzi holds a 50% interest in 320 North Washington Square Partnership, (Gentilozzi Dep. 32), a 60% interest in 3400 West Road, LLC (*Id.* at 23-24), a 99.9% interest in Atrium Partners (*Id.* at 21), a 60% interest in Victor Development II, LLC (*Id.* at 30-31), a 66.6% interest in Westland Center (*Id.* at 23), and a 100% interest in GRE.

3

(*Id.* at 13.)

Gentilozzi personally loaned Rocketsports $8.9 million from the time Rocketsports was formed in 1990 until it ceased operations in 2009. (Gentilozzi Dep. 72-73.) Between 2005 and 2009, Plaintiff's expert has documented approximately $7.6 million in loans from Gentilozzi or one of his companies to Rocketsports, and approximately $5.5 million in repayments from Rocketsports to Gentilozzi or one of his companies. (Hawkins Rpt., Ex. D, Loan List ll. 1-500.) If the time period is limited to the six years prior to the filing of this complaint, Gentilozzi and his companies loaned Rocketsports approximately $5.5 million and Rocketsports made loan repayments of approximately $2.7 million. (*Id.* at ll. 140-500). If loan payments to Victor II Partnership, and Victor Development LLC, who are not defendants, are removed from the list, Rocketsports transferred approximately $2.4 million to Gentilozzi and the Real Estate Defendants in the six years prior to the filing of this action.

There is only one promissory note ("Note") documenting Gentilozzi's loans to Rocketsports. (Gentilozzi Dep. 73.) That Note, from 1991, is for $10,000 and any additional amounts that Gentilozzi, at his sole discretion, loaned to Rocketsports. (Note, ECF No. 152-15.) The Note required repayment in monthly installments of not less than $100 at an annual interest rate of "five percent (3%) [sic]." (*Id.*) There are no meeting minutes or corporate resolutions authorizing the additional amounts loaned by Gentilozzi to Rocketsports. There are no notes or minutes authorizing the amounts loaned by the Real Estate Defendants. However, the loans are documented in ledger books and other operating, financial, and

4

accounting records kept by GRE on behalf of all of Gentilozzi's companies.

Plaintiff has not been able to collect on the judgment against Rocketsports because Rocketsports does not have any assets.  Plaintiff filed this action against Rocketsports, Gentilozzi, and other Gentilozzi-owned businesses in an effort to obtain satisfaction on the judgment from Gentilozzi and his other businesses, pursuant to claims of fraudulent transfer under Mich. Comp. Laws §§ 566.31-.43, against all defendants (Count 1), conspiracy to commit fraudulent conveyance against all defendants (Count 2), successor liability against RSR Racing (Count 3), and piercing the corporate veil of Rocketsports against Paul Gentilozzi (Count 4).

Defendants Gentillozi and RSR Racing filed motions to dismiss Counts 3 and 4, all Defendants have filed motions for summary judgment as to Counts 1, 2, and 4, and Plaintiff has filed a cross-motion for summary judgment as to all counts.

## II.  MOTIONS TO DISMISS

Defendant RSR Racing, LLC has moved to dismiss Count 3 of the complaint alleging successor liability (ECF No. 142), and Defendant Gentillozi has filed a motion to dismiss Count 4 of the complaint alleging piercing the corporate veil (ECF No. 144).

Rule 12(c) motions for judgment on the pleadings are analyzed under the same standard as motions to dismiss pursuant to Rule 12(b)(6).  *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010).  The Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the

5

plaintiff,'" but "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 992 (6th Cir. 2009) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).   To survive a motion to dismiss under Rule 12(b)(6) or 12(c), a complaint must allege facts that "state a claim to relief that is plausible on its face," and that, if accepted as true, are sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

## A.  Successor Liability Claim Against RSR Racing

Defendant RSR Racing moves to dismiss Count 3 alleging successor liability based on its contention that RSR Racing did not expressly assume the Ryan Racing liability, and, pursuant to *Starks v. Michigan Welding Specialists, Inc.*, 722 N.W.2d 888, 889 (Mich. 2006), successor liability is no longer a viable cause of action for judgment creditors outside the area of products liability unless there is an express assumption of liability.[2] Defendant cites two

---

[2]In *Starks*, the Michigan Supreme Court stated the following in a one-page opinion denying leave to appeal:

> Where, as here, a successor corporation acquires the assets of a predecessor corporation and does not explicitly assume the liabilities of the predecessor, the traditional rule of corporate successor non-liability applies.  *See*, *Foster v. Cone-Blanchard Machine Co.*, 460 Mich. 696, 702, 597 N.W.2d 506 (1999).  Because an exception designed to protect injured victims of defective products rests upon policy reasons not applicable to a judgment creditor, the Court declines to expand the exception to the traditional rule set forth in *Turner v. Bituminous Casualty Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976), to cases in which the plaintiff is a judgment creditor.

722 N.W.2d at 889.

6

unpublished Michigan Court of Appeals cases in support of the proposition that "*Starks*
makes clear that the Supreme Court will not apply the doctrine of successor liability in a
purely commercial context." *DeWitt v. Sealtex Co., Inc.,* No. 273387, 2008 WL 2312668,
at *4 (Mich. Ct. App. June 5, 2008); *see also Oliver v. Perry*, No. 296871, 2011 WL
2204128, at *8 (Mich. Ct. App. June 7, 2011) ("[T]he decision in *Starks* clearly and plainly
provides that a judgment creditor cannot enforce a judgment against a successor corporation
unless there has been an explicit assumption of the predecessor's debts . . . .").

RSR Racing and the two unpublished cases it relies on read *Starks*, a one-page
opinion affirming the judgment of the court of appeals, too broadly.  Contrary to Defendant's
assertion, *Starks* did not purport to abolish the traditional exceptions to successor
nonliability.  *See C.T. Charlton & Assocs. Inc. v. Thule, Inc*., 541 F. App'x 549, 552-53 (6th
Cir. 2013) (holding that the "mere continuation" doctrine of successor liability still applies
under Michigan law, and is not limited to products liability cases, even after *Starks*); *see also
In re Clements Mfg. Liquidation Co., LLC*, No. 09-65895-TJT, 2014 WL 5324095, at *19
(Bankr. E.D. Mich. Oct. 17, 2014).   Even after *Starks*, published Michigan cases have
continued to recognize the five exceptions to the traditional rule of nonliability for corporate
successors who acquire a predecessor through the purchase of assets, including the mere
continuation exception.  *See*, *e.g.*, *Lakeview Commons v. Empower Yourself*, 802 N.W.2d
712, 715 (Mich. Ct. App. 2010); *RDM Holdings, LTD v. Cont'l Plastics Co.*, 762 N.W.2d
529, 552 (Mich. Ct. App. 2008); *see also  Stramaglia v. United States*, 377 F. App'x 472,

474-75 (6th Cir. 2010); *Ferguson v. Glaze*, No. 268586, 2008 WL 314544, at *5 (Mich. Ct. App. Feb. 5, 2008).  Those courts' failure to mention *Starks* does not suggest that they ignored binding Michigan Supreme Court authority to the contrary.  Rather, as Judge Boggs explained in *C.T. Charlton*, *Starks* was discussing *Turner'*s "continuity of the enterprise" doctrine, not the "mere continuation" exception to successor nonliability, and the two doctrines are not the same.  541 F. App'x at 552-53.  *Starks* should be understood as declining only to apply *Turner*'s "continuity of the enterprise" doctrine to commercial cases. *Id.* "The 'mere continuation' exception remains narrow, but retains its general applicability." *Id.* at 552.

Because Starks did not eliminate the exceptions to corporate non-liability, Defendant RSR's motion to dismiss will be denied.

**B.  Piercing the Corporate Veil Against Gentilozzi**

In Count 4, Plaintiff seeks to pierce the corporate veil of Defendant Rocketsports to reach its owner, Defendant Gentilozzi.  Defendant Gentilozzi has moved to dismiss Count 4, based on his assertion that neither state nor federal law allows a new suit alleging the remedy of veil piercing for a liability established in a prior action.

Plaintiff does not dispute that piercing the corporate veil is not by itself a cause of action, but contends that its veil-piercing claim is properly brought in this litigation as a remedy for its fraudulent conveyance claims, neither of which were required to have been brought in the earlier litigation.

8

A veil piercing or alter ego claim "is not by itself a cause of action." *In re RCS Eng'd Prods. Co., Inc.*, 102 F.3d 223, 226 (6th Cir. 1996); *see also Kostopoulos v. Crimmins*, No. 299478, 2011 WL 6848354 at *3 (Mich. Ct. App. Dec. 29, 2011) (noting that Michigan has never recognized piercing the corporate veil "by itself" as a cause of action). Nevertheless, Defendant Gentilozzi has identified no cases that have suggested that such a remedy could not be sought in a second action if accompanied by another cause of action. In *Green v. Ziergelman*, 767 N.W.2d 660 (Mich. Ct. App. 2009), the court held that under Michigan law a party cannot use a proceeding supplementary to judgment to pierce the corporate veil and to enter an additional judgment against a party not previously subject to a judgment on the claim at issue. *Id.* at 303-04 (citing Mich. Comp. Laws § 600.6104; Mich. Ct. R. 2.621). The Court emphasized that the case did not involve "allegations of an unlawful transfer of property from [the judgment debtor] to [defendant] in avoidance of attempts to collect on the judgment, nor allegations that [defendant] possessed assets legally belonging to [the judgment debtor]." *Id.* at 304. Similarly, in entering summary judgment against the plaintiff on its veil-piercing claim in *Kostopoulous*, the court noted that the complaint contained only the veil piercing claim and "did not allege any unlawful conduct by defendant or [the judgment debtor] subsequent to the prior lawsuit and the consent judgment." 2011 WL 6848354, at *4.

Plaintiff's complaint in this case alleges claims for fraudulent transfer (Count 1) and conspiracy to commit fraudulent conveyance (Count 2). Neither of these claims were

required to have been brought in the earlier litigation.  Accordingly, because Plaintiff has alleged unlawful conduct that was not the subject of the previous state court action, and because Plaintiff is seeking to pierce the corporate veil as a remedy for that unlawful conduct, the Court is satisfied that Plaintiff has stated a claim on which relief can be granted. Defendant Gentilozzi's motion to dismiss will accordingly be denied.

### III. MOTIONS IN LIMINE REGARDING EXPERT WITNESS

Defendants have moved to preclude from evidence the first and supplemental expert reports and related testimony of Plaintiff's expert witness, J. Stephen Hawkins, CPA. Defendants contend that Hawkins's first report is unreliable and based on "cherry picked" facts that are improperly incorporated into legal conclusions.  Defendants contend that Hawkins' supplemental report suffers from similar defects and that it is also untimely.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702.[3] A proposed expert's opinion is admissible under Rule 702 if it satisfies three requirements: (1) "the witness must be qualified by 'knowledge, skill, experience, training, or education,'"

---

[3]Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid 702.

(2) "the testimony must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue,'" and (3) "the testimony must be reliable."  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528-29 (6th Cir. 2008) (quoting Fed. R. Evid. 702.)

There is no question that Hawkins is qualified.  He has been a CPA for 35 years, he is a certified fraud examiner and forensic accountant, and he has testified as an expert in both state and federal court cases.  (Hawkins Rpt., ECF No. 122-1.)  Nor is there any real dispute that testimony from a forensic accountant would be helpful to assist the trier of fact to understand the numerous inter-company loans and payments that are at the heart of this action.  Defendants object to Hawkins' expert reports based on their contention that Hawkins' opinions regarding solvency, payment of personal expenses, lack of documentation, failure to follow corporate formalities, and the lack of a meaningful financial, accounting or business purpose for the Rocketsports asset sale to RSR are unreliable and/or constitute inadmissible legal opinions.

In deciding whether an expert's opinion is reliable, the court's task "is not to determine whether it is correct, but rather to determine whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation."  *In re Scrap Metal*, 527 F.3d  at 529-30.  An expert's opinion must find some support in the record, but "'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'"  *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000)

(quoting  *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)).

"An opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).  An opinion as to an ultimate issue may, however, be objectionable on other grounds. An opinion that merely tells the jury what result to reach could be excluded because it is not helpful to the trier for fact or would waste time. *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).  Moreover, "opinions phrased in terms of inadequately explored legal criteria" should be excluded from evidence where they invade the province of the court to determine the applicable law. *United States v. Safa*, 484 F.3d 818, 821 (6th Cir. 2007); *Torres*, 758 F.2d at 150.

The Court is satisfied that Hawkins' opinions are drawn from the ledger books supplied by Defendants.  Even though Defendants may disagree with the conclusions Hawkins has drawn from those records, Hawkins' opinions find some support in the record. Defendants' objections to those opinions goes to the weight of Hawkins' testimony, not to its admissibility.  The Court is also satisfied that Hawkins' opinions will not invade the province of the court to define legal terms.  For example, Hawkins' opinion on solvency is is based on fact-based accounting principles that consider whether liabilities exceed assets and ability to pay debts as the come due.  These opinions will not supplant the Court's role of determining the proper definition of solvency under the Michigan Uniform Fraudulent Transfer Act ("UFTA").

To the extent Defendants object to Hawkins' supplemental report as untimely, the

12

objection lacks merit.  Defendants contend that the August 28, 2013, supplemental report is untimely because Plaintiff was required to produce its expert report under Rule 26(a)(2)(B) by June 21, 2013.  Although the Case Management Order, as amended, required Plaintiff to produce its expert report by June 21, 2013, Rule 26 requires parties to supplement their disclosures when required under Rule 26(e).  Fed. R. Civ. P. 26(a)(2)(E).  Rule 26(e) requires supplementation in a "timely" manner, and, for expert reports, at least 30 days before trial. Fed. R. Civ. P. 26(e) & 26(a)(3).  Defendants have not shown that the supplemental report was not timely filed, and they acknowledge that any harms they have suffered from the delay are "not debilitating."  (Defs.' Br. 4, ECF No. 131.)

For the reasons stated, Defendants' motions to preclude expert reports and related testimony will be denied.

## IV.  MOTIONS FOR SUMMARY JUDGMENT

Defendants have moved for partial summary judgment as to the fraudulent transfer, conspiracy, and piercing the corporate veil counts (Counts 1, 2, and 4 of Plaintiff's complaint).[4]  Plaintiff has filed a cross-motion for summary judgment on all four counts of its complaint, including the three counts that are the subject of Defendants' motion, and the successor liability count (Count 3).

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is

---

[4]The denial of a motion to dismiss for failure to state a claim does not preclude a later summary judgment motion arguing that the plaintiff in fact cannot show evidence to support the claim. *Stemler v. Florence*, 350 F.3d 578, 590 (6th Cir. 2003).

proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the moving party carries its burden of showing there is an absence of evidence to support a claim, then the nonmoving party must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes.  *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party."  *Oh. Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).  Nevertheless, the mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252.  The proper inquiry is "whether the evidence presents a sufficient disagreement to require submission to

a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

## A. FRAUDULENT CONVEYANCE

Count 1 of Plaintiff's complaint alleges a claim of fraudulent transfer under the Michigan Uniform Fraudulent Transfer Act ("UFTA"), Mich. Comp. Laws §§ 566.31-46, against all defendants. "The UFTA was designed to protect unsecured creditors against debtors who make transfers out of, or make obligations against, the debtor's estate in a manner adverse to the creditors' rights." *In re Michigan Mach. Tool Control Corp.*, 381 B.R. 657, 667 (Bankr. E.D. Mich. 2008) (quoting *Multi-Grinding, Inc. v. Richardson Sales & Consulting Servs., Inc.*, No. 245779, 2004 WL 1335813 at *2 (Mich. Ct. App. June 15, 2004) (internal quotations omitted)). "The UFTA permits a creditor to seek remedies including avoidance, attachment, execution, and injunctive relief when a fraudulent conveyance has been made by a debtor." *John Ceci, P.L.L.C. v. Johnson*, No. 288856, 2010 WL 1872927, at *2 (Mich. Ct. App. May 11, 2010) (citing Mich. Comp. Laws § 566.37(1); *Estes v. Titus*, 751 N.W.2d 493, 500-01 (Mich. 2008)). "Relief under the UFTA determines only the creditor's right to fraudulently transferred property." *Estes*, 751 N.W.2d at 500-01.

Plaintiff contends that it is unable to collect on its judgment because Rocketsports fraudulently transferred its assets to RSR, Gentilozzi and the Real Estate Defendants. Plaintiff has asserted claims under two provisions of the UFTA: (1) section 4(a)(1), which prohibits transfers made "[w]ith actual intent to hinder, delay, or defraud any creditor of the

15

debtor," Mich. Comp. Laws § 566.34(1)(a); and (2) section 5(1), which prohibits transfers made "without receiving a reasonably equivalent value in exchange for the transfer or obligation" where "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Mich. Comp. Laws § 566.35(1).

"The party seeking to have a conveyance set aside as fraudulent has the burden of producing evidence to support his claim." *Craft v. United States*, 65 F. Supp. 2d 651, 656 (W.D. Mich. 1999) (citing *Dean v. Torrence*, 299 N.W. 793, 797 (1941)), *rev'd on other grounds*, 535 U.S. 274 (2002). Plaintiff asserts that transfers of $6,235,000 from Rocketsports to Gentilozzi and the Real Estate Defendants were made with the intent to defraud the creditors of Rocketsports in violation of section 4(1)(a). Plaintiff asserts that the July 2009 transfer from Rocketsports to RSR pursuant to the Asset Purchase Agreement was made with the intent to defraud the creditors of Rocketsports in violation of section 4(1)(a), and that the transfer was made without receiving a reasonably equivalent value in exchange at a time when Rocketsports was insolvent, in violation of section 5(1).

Actions under UFTA sections 4(1)(a) and 5(1) are subject to a 6-year limitations period. Mich. Comp. Laws § 566.39 (citing Mich. Comp. Laws § 600.5813 (action shall be commenced within 6 years after claim accrues)). The Complaint was filed on May 5, 2012. Plaintiff does not challenge Defendants' assertion that Plaintiff's fraudulent-transfer claims are limited to May 5, 2006, forward.

## 1. Assets

Defendants move for summary judgment on Plaintiffs' UFTA claims.  Defendants have raised numerous defenses to the claims, but as a threshold matter Defendants contend that the transfer from Rocketsports to RSR under the Asset Purchase Agreement ("APA") cannot violate the UFTA because there was no transfer of assets.

The UFTA prohibits fraudulent transfers of "assets."  The Act defines "assets" as "property of a debtor, but the term does not include . . . [p]roperty to the extent it is encumbered by a valid lien."  Mich. Comp. Laws § 566.31(b).  Defendants contend that the personal property items transferred from Rocketsports were not "assets" as defined in the UFTA because they were subject to liens from creditors that exceeded the property's value.  Specifically, Defendants contend that the assets were subject to UCC liens held by Independent Bank and Sun Trust Bank, and two tax liens.

An asset can be the subject of a fraudulent transfer to the extent that the debtor retains equity in it.  *See Multi-Grinding*, 2004 WL 1335813, at *5 n.3 (noting that "[p]roperty of a debtor is an asset to the extent it is not encumbered by a valid lien."); *Mussetter v. Lyke*, 10 F. Supp. 2d 944, 958-59 (N.D. Ill. 1998) ("Uniform case law confirms the self-evident proposition that the unencumbered portion of a debtor's property is an 'asset' for UFTA purposes.") .

Plaintiff contends that Rocketsports maintained equity in its assets despite the liens because Rocketsports was over-secured.  According to Plaintiff, the outstanding debts to the

banks were less than the value of the assets. (Hawkins Rpt. 5, 9-12.) Defendants acknowledge that as of July 2009, Rocketsports' secured debt to Independent Bank was $222,865.52, and it had tax liens of $145,719.50. (Defs.' Br. 5-6, ECF No. 150.) As of June 30, 2009, Rocketsports gave a book value to its assets of $1,668,786, and fixed assets of $737,915. (June 30, 2009, Rocketsports Asset List, ECF No. 156-16.) According to Plaintiffs, the evidence reflects that Rocketsports' assets exceeded its general asset liens by more than $1 million, leaving ample equity. As to the two Sun Trust Bank liens totaling $362,971.05, Plaintiff notes that these liens were on specific assets, and as of June 30, 2009, those assets were valued at $361,201 and $225,000.

Defendants contend that Plaintiff's assertion that there was equity in the property is not supported by evidence of the value of the property, the balances due at the time of transfer, or the extent of the liens. For purposes of their analysis, Defendants use the APA's valuation of $584,870 for the fixed assets, which is significantly less than the $737,915 value reflected in the June 30, 2009, asset list. Defendants further contend that Plaintiff's argument regarding the liens ignores the fact that Rocketsports guaranteed a loan by Independent Bank to Defendant 3400 West Road, LLC, secured by all assets. Defendants contend that with tax liens and other secured loans which had a July 2009 balance of $731,566, and the $1,535,042 balance on the Rocketsports-guaranteed 3400 West Road loan, the secured loan and lien balance as of July 2009 was $2,266,608, which was greater than the value of the assets.

There are significant factual disputes concerning which loans to consider and what

value should be ascribed to Rocketsports' assets.  These issues of fact preclude a finding that Rocketsports had no equity in its assets at the time of the transfer to RSR.  Accordingly, Defendants' motion for summary judgment on the UFTA claim basis that there was no transfer of assets will be denied.

## 2.  UFTA Section 4(a)(1) Actual Intent to Defraud

To succeed on its claim under UFTA section 4(a)(1) Plaintiff must show that transfers were made "[w]ith actual intent to hinder, delay, or defraud" creditors.  Mich. Comp. Laws § 566.34(1)(a).  The UFTA provides that in determining whether the requisite intent has been shown, courts may consider, among other factors, a list of eleven "badges of fraud."  Mich. Comp. Laws § 566.34(2)(a)-(l).  "'Badges of fraud are not conclusive, but are more or less strong or weak according to their nature and number concurring in the same case, and may be overcome by evidence establishing the bona fides of the transaction.'"  *Wells v. Salmo (In re Select One, Inc.)*, No. 12-05664, 2013 WL 4084103 at *17 (Bankr E.C. Mich. Aug. 13, 2013) (quoting *Bentley v. Caille*, 286 N.W. 163, 164 (Mich. 1939)); *see also Coleman-Nichols v. Tixon Corp.*, 513 N.W.2d 441, 449 (Mich. Ct. App. 1994).  "A 'concurrence of several [of these factors] will always make out a strong case' in support of fraudulent intent."  *John Ceci, P.L.L.C. v. Johnson*, No. 288856, 2010 WL 1872927, at *4 (Mich. Ct. App. May 11, 2010) (quoting *Bentley*, 286 N.W. at 164).

Plaintiff contends that Rocketsports' transfers to RSR, to Gentilozzi, and to the Real Estate Defendants were all made with intent to defraud Rocketsports' creditors, and that this

19

fraudulent intent is established by the presence of five of the  badges of fraud.

a.  Transfers to Insiders

One of the badges of fraud recognized by the UFTA is the transfer of assets to an insider.  Mich. Comp. Laws § 566.34(2)(a).  Plaintiff contends that this badge is met because Defendants are all insiders of one another.  If the debtor is a corporation, the UFTA defines an "insider" to include all of the following:

> (ii) If the debtor is a corporation, all of the following:
> (A) A director of the debtor.
> (B) An officer of the debtor.
> (C) A person in control of the debtor.
> (D) A partnership in which the debtor is a general partner.
> (E) A general partner in a partnership described in sub-subparagraph (D).
> (F) A relative of a general partner, director, officer, or person in control of the debtor.

Mich. Comp. Laws § 566.31(g)(ii).

Defendants acknowledge that Gentilozzi is an insider because he is the sole owner of Rocketsports.  Defendants contend, however, that neither RSR nor the Real Estate Defendants fall within the definition of "insider" because they did not own or control Rocketsports.  Defendants are mistaken.  The UFTA's definition of insider also includes "[a]n affiliate or an insider of an affiliate as if the affiliate were the debtor." *Id.* at § 566.31(g)(iv).  An "affiliate" includes "[a] corporation 20% or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote by the debtor or a person who directly or indirectly owns, controls, or holds, with power to vote, 20% or more of the outstanding voting securities of the debtor . . . ." *Id.* at § 566.31(a).

Gentilozzi, RSR, and the Real Estate Defendants are all insiders for purposes of the UFTA.

    b.  <u>Transfer of substantially all of the debtors' assets</u>

The second badge of fraud Plaintiff relies on is the transfer of substantially all of the debtor's assets. Mich. Comp. Laws § 566.34(2)(e). Plaintiff asserts that the Rocketsports transfer to RSR under the APA and the "loan" transfers to all of the Defendants transferred substantially all of Rocketsports' assets.

There is no question that the transfer from Rocketsports to RSR qualifies under this badge. Rocketsports transferred substantially all of its assets to RSR under the APA. It is less clear whether Plaintiff has established this badge with respect to the various transfers from Rocketsports to Gentilozzi and the Real Estate Defendants. Plaintiff has not identified any single transfer that involved substantially all of Rocketsports' assets. Rather, Plaintiff relies on the fact that Rocketsports transferred over $6,235,000 from 2005 to 2009, during which time period the value of Rocketsports' assets ranged from $4 million to less than $1.7 million. Plaintiff contends that these transfers occurred at a time when Rocketsports was insolvent and served to further push Rocketsports into debt. Plaintiff has also presented evidence that the payments were made without loan documentation, that there were inconsistencies between who made the loan and who was repaid, and that many of the loans and repayments occurred on the same day. Defendants, on the other hand, characterize these transfers as routine loan repayments, which are, by definition, transfers for value.

Whether the transfers to Gentilozzi and the Real Estate Defendants are non-events as

characterized by Defendants, or whether they are suspicious and problematic as characterized by Plaintiff's expert (Hawkins Supp. Rpt. 5-6, ECF No. 152-11), cannot be determined on summary judgment.

    c.  <u>Transfer not for reasonably equivalent value</u>

The third badge of fraud Plaintiff relies on is that the transfer was not for a reasonably equivalent value. Mich. Comp. Laws § 566.34(2)(h). Plaintiff only relies on this badge with respect to the transfer to RSR. Plaintiff does not assert that the loan transfers to Gentilozzi and the Real Estate Defendants were not for reasonably equivalent value.

The APA reflects that Rocketsports transferred $734,870 in property to RSR in exchange for RSR's assumption of $1,292,147 in liabilities. (ECF No. 150, Ex. 1, APA §§ 1.1, 2.1.) In support of its contention that the transfer from Rocketsports to RSR was not for reasonably equivalent value, Plaintiff has presented evidence that Rocketsports did not obtain a third-party opinion on the value of the assets transferred. (Gentilozzi Dep. 170-71.) Rather, Gentilozzi merely took values estimated by employees John Gentilozzi and John Book and added 10 % to insure that RSR paid more than anybody could say that the property was worth. (Gentilozzi Dep. 170-75.) According to Gentilozzi, in assigning a value of $500,000 to the goodwill of Rocketsports, he just made the number up. (Gentilozzi Dep. 175, 190.) Plaintiff has also produced evidence that the $584,870 value assigned to the fixed assets in the July 2009 APA was far less than the $737,915 value assigned to the fixed assets in Rocketsports' own June 2009 balance sheet.

Defendants claim that RSR paid a reasonably equivalent value for Rocketsports because it assumed $1.2 million in liabilities. This claim hinges on Defendants' assertion that Rocketsports' assets were only worth $734,870. But if the correct valuation of Rocketsports' assets is $1,668,786, then the assumption of $1.2 million in liabilities was insufficient to render the transfer an exchange for reasonably equivalent value. Whether the transfer to RSR was for a reasonably equivalent value is a question of fact for trial.

d. Insolvency

The fourth badge of fraud Plaintiff relies on is that the debtor was insolvent or became insolvent shortly after the transfer was made. Mich. Comp. Laws § 566.34(2)(i). Plaintiff has produced substantial evidence that Rocketsports was insolvent for each year from 2005 until it closed in 2009. (Hawkins Rpt. 4-5.)

Defendants admit that Rocketsports' liabilities always exceeded its assets. (Def. Br. 15-16, ECF No. 154; Glover Dep. 79-80; Gentilozzi Dep. 81-82). Gentilozzi's accountant, Steven W. Scott, testified that Rocketsports was insolvent in 2009, and that in the years 2005 and 2007 its liabilities exceeded its assets. (Scott Dep. 47-48.) Defendants contend that Rocketsports' technical insolvency was primarily due to loans from Gentilozzi that were never called due in full and which were later classified as capital contributions.[5] (Def. Br. 15, ECF No. 154.) Defendants contend that mere balance sheet insolvency is mitigated

---

[5] In 2009, when Rocketsports filed its last 2009 tax return, Gentilozzi reclassified the loan balance as paid-in capital. (Gentilozzi Aff. ¶ 29, ECF No. 147-2.) Gentilozzi contends that as a result, he effectively contributed over $9 million to Rocketsports in excess of any amounts Rocketsports may have repaid him over nearly 20 years. (Id. at ¶ 29.)

where the company debts to the company owner and third party lenders were not due in full at the time of the challenged transfer.  *Lease Equities Fund, Inc. v. Charters, Inc.*, No. 219086, 2001 WL 936747 at *3-4 (Mich. Ct. App. Aug. 17, 2001) ("In sum, our courts recognize that if a debtor's existing assets were sufficient to meet his existing obligations, i.e., his absolute and matured debts, just before and just after the challenged conveyance, he was solvent.")

The Gentilozzi loans were not reclassified as capital contributions until well after the transfer to RSR, so this occurrence has little, if any, bearing on the insolvency analysis. Moreover, Defendants' reliance on *Lease Equities* is misplaced.  *Lease Equities* applied a prior definition of insolvency from UFTA section 566.12 that was repealed in 1998.  2001 WL 936747 at *3 (quoting definition of insolvency from Mich. Comp. Laws § 566.12, that was repealed by 1998 Mich. Pub. Acts 434.)  In addition, Plaintiff has produced evidence that Rocketsports was not able to meet its existing obligations.  Plaintiff's expert has opined that Rocketsports was insolvent not only because its debts exceeded its assets, but also under the second measure of inability to pay debts as they come due.  (Hawkins Rpt. 4-5.)

e.  Transfer shortly before incurring a substantial debt

The final badge of fraud Plaintiff relies on is that the transfers occurred shortly before Rocketsports incurred a substantial debt.  Mich. Comp. Laws § 566.34(2)(j).

Plaintiff's claim against Rocketsports arose in 2005 when Rocketsports breached its driver contract with Plaintiff.  On October 24, 2005, Hunter-Reay sent a letter demanding

24

that he be allowed to drive through the remainder of the season.  (Gentilozzi Dep. 191, ECF

No. 152-1.)  Gentilozzi understood in October 2005 that Ryan Racing was threatening to file

suit regarding the termination and signed an affidavit in anticipation of such a suit on

October 13, 2005.  (*Id.* at 191-93; *Id.* at Ex. 7.)  RSR was formed in April 2009, well after

Plaintiff filed its notice of arbitration in 2008, and just weeks before the June 2009

arbitration.  RSR was not funded until July 31, 2009, just 19 days before the arbitration

award was issued.   The July 2009 Asset Transfer indisputably occurred shortly before

Rocketsports incurred a substantial debt.  Defendants concede that Rocketsports' sale of

assets to RSR was close in time to the arbitration award. (Defs.' Br. 18, ECF No. 154.)

Plaintiff has also presented evidence that RSR was formed shortly before entering into a

lucrative May 6, 2009, contract with Jaguar that paid RSR $3.7 million in 2010. (ECF No.

158, Ex. C, Hawkins Rpt. 10; Ex. D, Gentilozzi Dep. 179; Jaguar Agrmt., ECF No. 154-3.)

Defendants have presented testimony that the Jaguar contract only reimbursed RSR

for expenses incurred in racing; profits were only to be realized by RSR if it parlayed that

race exposure into the sale of race cars, and RSR never sold any of the race cars.  (Gentilozzi

Supp. Aff. ¶ 5.)  Accordingly, Defendants assert that the Jaguar contract did not generate any

profit, and that it is not evidence of an intent to defraud.

It appears that the transfers to Gentilozzi and to the Real Estate Defendants were made

periodically during the entire six-year time period at issue.  Plaintiff nevertheless contends

that these transfers qualify as transfers made shortly before incurring a substantial debt

because they were made after Defendants became aware in October 2005 that Plaintiff was likely to sue regarding the breach of contract. The Court is not persuaded that transfers made over a five-year period qualify as transfers made close in time to when Rocketsports incurred a substantial debt.

Defendants contend that even if the transfer to RSR was close in time to the arbitration, it is not evidence of an intent to defraud. Defendants have presented testimony that the formation of RSR had been in the works for months, that RSR was formed due to considerations that had nothing to do with the arbitration, including the lack of success of Rocketsports and the need to form a new entity in order to obtain the Jaguar contract. In addition, Defendants have presented testimony that they were not aware that they would lose the arbitration, or that any arbitration award would be so great. As to the transfers to Gentilozzi and the Real Estate Defendants, Defendants have presented evidence that these were routine transactions of a type that had been occurring from before the 2005 breach of contract. Defendants accordingly contend that these transfers had no connection to the arbitration.

f. Conclusion Regarding Badges of Fraud

Plaintiff has made out a strong case of intent to defraud with respect to the transfer of assets from Rocketsports to RSR based on the five badges of fraud under the UFTA. Plaintiff contends that in light of this showing, it should be granted summary judgment on its fraudulent transfer claim, as the court held in *John Ceci*.

26

In *John Ceci*, the Michigan Court of Appeals held that the trial court erred in denying the plaintiff's motion for summary disposition where the plaintiff presented evidence that less than two weeks after an arbitration award in the plaintiff's favor, the defendant transferred her interest in property to a newly created limited liability company  for less than a reasonably equivalent amount.  The court held that this evidence of three badges under UFTA  sections 4(2)(d), (h), and (j) was demonstrative of actual intent to hinder, delay or defraud a creditor pursuant to the UFTA.  2010 WL 1872927, at *5.  Nevertheless, *John Ceci* does not stand for the proposition that the court must grant summary judgment in Plaintiff's favor.  In *John Ceci*, the court held that summary judgment was proper because the plaintiff made a strong showing of the badges of fraud, and the defendant did not bring in evidence to create a genuine issue of material fact.  *Id.*  Here, by contrast, Defendants have come forward with sufficient evidence of the bona fides of the transaction to create an issue of fact for trial.  Even though Plaintiff has shown a strong case of intent to defraud, the evidence is not conclusive, and the Court is not entitled to weigh the evidence or make credibility findings on summary judgment.

Plaintiff has made a showing that some of the badges of fraud occurred with respect to the transfers from Rocketsports to Gentilozzi and to the Real Estate Defendants.  Although the showing is weak by comparison to the showing on the transfers to RSR, the showing is sufficient to withstand Defendants' motion for summary judgment.  Accordingly, the Court will deny the parties' cross-motions for summary judgment on the section 4(a)(1) fraudulent

conveyance claim.

g.  Good Faith Defense

Defendants contend they are entitled to dismissal of the UFTA section 4(1)(a) claim based on the good faith defense.  The UFTA provides that a transfer is not voidable under section 4(1)(a) against a person who took in good faith and for a reasonably equivalent value. Mich. Comp. Laws §  566.38(1).  Rocketsports' transfer of all of its assets to RSR after arbitration ended, and just 19 days before the $2.7 million arbitration award was issued, raises a question of fact for trial as to whether the RSR transfer was made as a good faith business decision, or whether it was made in a bad faith effort to avoid paying the imminent arbitration award.  There is also a question of fact, as outlined above, as to whether the transfer was for a reasonably equivalent value.   Accordingly, Defendants' request for summary judgment based on the good faith defense is denied.

**3.  UFTA Section 5(1) Reasonably Equivalent Value and Insolvency**

Plaintiff contends that the Asset Purchase Agreement between Rocketsports and RSR violated section 5(1) of the UFTA because Rocketsports made the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation," and "the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." Mich. Comp. Laws  § 566.35(1).

The Court has already determined in Part IV(A)(2)(c) above that there are questions of fact concerning whether Rocketsports received a reasonably equivalent value in exchange

28

for its transfer of assets to RSR. Accordingly, the parties' cross-motions for summary judgment on the UFTA section 5(a) claim will be denied.

## B. CONSPIRACY

Count 2 of Plaintiff's complaint alleges conspiracy to commit fraudulent conveyance against all of the Defendants.

"A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). A civil conspiracy claim is only as good as the underlying tort claim; if a plaintiff fails to establish any actionable underlying tort, the conspiracy claim must also fail. *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003).

Plaintiff and Defendants seek summary judgment on the conspiracy claim based on their contention that they are each entitled to summary judgment on the underlying fraudulent transfer claim. To the extent the motions are premised on the success or failure of the underlying tort claim, they must be denied because the same questions of fact that preclude the Court from granting summary judgment to either party on the fraudulent transfer claim preclude the entry of summary judgment on the conspiracy claim.

Defendants also contend that they are entitled to summary judgment on the civil conspiracy claim because conspiracy requires more than one participant, and Plaintiff has

29

improperly based its argument on the proposition that Gentilozzi conspired with himself.

Although Gentilozzi controlled his own actions and the actions of his various companies, that does not preclude a finding of a conspiracy between the various companies. Plaintiff has presented evidence that Gentilozzi and the various entities he owned participated in a conspiracy to defraud Plaintiff. The fact that Gentilozzi controlled each of the separate entities is not a basis for dismissing the conspiracy claim. Defendants' argument that they are entitled to dismissal of the conspiracy claim because one cannot conspire with oneself almost sounds like a concession that the companies do not have separate corporate identities. There may be a good basis for piercing the corporate veil, but unless and until the Court does so, the Court will treat each of the Defendants as a separate legal entity that can enter into agreements with the others.

## C. SUCCESSOR LIABILITY

Count 3 of Plaintiff's complaint alleges a claim of successor liability against Defendant RSR Racing. Plaintiff has requested summary judgment in its favor on Count 3. Defendant RSR opposes Plaintiff's motion. RSR has not moved for summary judgment in its own favor as to this count.

The basic rule in Michigan where a purchase is accomplished by an exchange of cash for assets is that the successor is not liable for its predecessor's liabilities unless one of the following five narrow exceptions applies:

> (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction

30

was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Lakeview Commons v. Empower Yourself*, 802 N.W.2d 712, 715 (Mich. Ct. App. 2010) (quoting *Foster v. Cone-Blanchard Machine Co.*, 597 N.W.2d 506, 509-10 (Mich. 1999)).

Plaintiff asserts that three exceptions to the "traditional rule of successor liability" apply: (1) the RSR transfer was made in bad faith; (2) the RSR transfer was fraudulent; and (3) RSR was a mere continuation of Rocketsports.

The Court has already determined in Part IV(A)(2) above that Plaintiff presented evidence that the transfer to RSR was fraudulent and in bad faith. Plaintiff has also presented evidence that both RSR and Rocketsports were engaged in essentially the same business of developing, constructing, selling, and racing race cars, that Gentilozzi controlled both RSR and Rocketsports, that RSR was capitalized with only $1,000, and that RSR used Rocketsports' office location, furniture, and telephone number, and most of Rocketsports' employees. (Warren Dep. 42-45; Gentilozzi Dep. 190; D. Gentilozzi Dep. 46-48, 162.) Plaintiff's expert has opined that Gentilozzi made a unilateral decision to transfer the assets and business operations of Rocketsports to RSR without any business, financial, or tax benefit either being discussed, reviewed, analyzed, or otherwise planned in advance, and that given the timing, similarities of name, lack of business purpose, arbitrary assignment of asset values, the picking and choosing of liabilities transferred, the lack of Rocketsports lender approval for notes transferred, there was no purpose for creating RSR and entering into the

31

APA other than to avoid paying the imminent judgment in favor of Ryan Racing.  (Hawkins Rpt. 12.)

In response, Defendants have presented evidence that RSR and Rocketsports were not in precisely the same business.  While Gentilozzi was the exclusive owner of Rocketsports, he owns RSR together with his sons who each hold a 20% share.  (Gentilozzi Dep. 163.) While Rocketsports was a general service company that built and sold Trans Am cars and ran Indy cars, RSR builds and races cars exclusively for Jaguar and does not race Indy cars. (Gentilozzi Dep. 152.)  Moreover, RSR does not test cars for others, as Rocketsports did. Defendants have also presented evidence that there was a business reason for creating RSR. Specifically, they contend that Rocketsports' long-time General Motors and Oldsmobile brand affiliation would have prevented it from agreeing to an exclusive contract with Jaguar because the Jaguar contract prohibited the endorsement of any automotive produce or service that was in direct competition with Jaguar products or services.  (Jaguar Contract § 5.2, ECF No. 154-3.)

Plaintiff has made a substantial showing in support of its successor liability claim, but the Court concludes, for the same reasons set forth with respect to the fraudulent transfer claim, that this issue cannot be decided on summary judgment because there are numerous issues of fact for trial, including issues concerning whether the transfer was made in bad faith, whether the transfer was fraudulent, and whether RSR was a mere continuation or reincarnation of Rocketsports.

**D. Piercing the Corporate Veil of Rocketsports**

Count 4 of Plaintiff's complaint alleges a claim of piercing the corporate veil of Rocketsports against Gentilozzi. The parties have filed cross-motions for summary judgment on this claim.

"[T]he general principle in Michigan is that separate corporate identities will be respected, and thus corporate veils will be pierced only to prevent fraud or injustice." *Wodogaza v. H & R Terminals, Inc.*, 411 N.W.2d 848, 852 (Mich. Ct. App. 1987); *see also Wells v. Firestone Tire & Rubber Co.*, 364 N.W.2d 670, 674 (Mich. 1984). The equitable doctrine of piercing the corporate veil "provides a means for a court of equity to disregard the corporate structure when there is a unity interest between shareholders and a corporation and an abuse of the corporate form." *Multi-Grinding*, 2004 WL 1335813, at *2 (citing *Foodland Distributors v. Al-Naimi*, 559 N.W.2d 379, 381 (Mich. Ct. App. 1996)). "A court may find that one entity is the alter ego of another and pierce the corporate veil upon proof of three elements: first, the corporate entity must be a mere instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and third, there must have been an unjust loss or injury to the plaintiff." *In re RCS Eng'd Prods.*, 102 F.3d at 226 (citing *Nogueras v. Maisel & Assoc. of Mich.*, 369 N.W.2d 492, 498 (Mich. Ct. App. 1985)). "Factors to be considered include undercapitalization of the corporation, the maintenance of separate books, the separation of corporate and individual finances, the use of the corporation to support fraud or illegality, the honoring of corporate formalities, and whether the

33

corporation is merely a sham." *Laborers' Pension Trust Fund v. Sidney Weinberger Homes, Inc.*, 872 F.2d 702, 704-05 (6th Cir. 1988) (citing *Contractors, Laborers, Teamsters & Eng'rs Health Plan v. Hroch*, 757 F.2d 184, 190 (8th Cir.1985)).

A veil piercing or alter ego claim "is not by itself a cause of action." *In re RCS Eng'd Prods.*, 102 F.3d at 226.  If no fraudulent transfer is found, fraudulent transfer cannot be used as a theory to support piercing the corporate veil.  *SCD Chem. Distrib. Inc. v. Medley*, 512 N.W.2d 86, 90 (Mich. Ct. App. 1994).  Because Plaintiff has not obtained a judgment on its underlying fraudulent transfer claims, Plaintiff is not entitled to summary judgment on its veil-piercing claim.

Gentilozzi has moved for summary judgment in his favor on the veil-piercing claim on the basis that the evidence does not support this extraordinary remedy.  Gentilozzi contends that there is no evidence of a misuse of corporate funds for non-business items, and that Rocketsports observed more than the requisite corporate formalities.

Notwithstanding Gentilozzi's assertions to the contrary, the Court is satisfied that there is sufficient evidence in the record to create issues of fact for trial.  In support of its request to pierce the corporate veil, Plaintiff has presented evidence that Gentilozzi and his wife, who was not a Rocketsports employee, charged over $200,000 in personal expenses on the Rocketsports corporate credit card, including airline tickets and accommodations for Gentilozzi's friends for admittedly non-business related travel (Gentilozzi Dep. 237-72), and purchases at stores such as Tiffany's, Toys-R-Us and Billabong. (Gentilozzi Dep. 52-53, 55.)

34

Plaintiff has also presented evidence that Rocketsports was insolvent for most of the years of its operation.  Finally, Plaintiff has presented evidence that Rocketsports did not honor corporate formalities.  For example, Plaintiff has presented expert testimony that the failure to document over $6 million in intercorporate loans between 2005 and 2009 with loan documents or minutes, the failure to have documented business plans, budgets, or cash flow projections, and the transferring of funds in and out of the corporations on a same day basis evidenced a failure to abide by normal business practices.  (Hawkins Rpt. at 8.)

Although Gentilozzi has presented evidence that some of the items Plaintiff has designated as personal were in fact business expenses, Gentilozzi does not deny some personal use of the Rocketsports credit card.  He contends, however, that there was no misuse of corporate funds because all personal expenditures were listed as personal on the ledgers maintained by Gentilozzi Real Estate and were treated as loan repayments.  (Gentilozzi Dep. 22, 113, 115, 118, 239-40; Glover Dep. 81-85.)  He affirmatively asserts that Rocketsports did not incur any non-business expenses that he did not personally pay for, and that Rocketsports's operating records, financial records, accounting records, cash expenditure records, and loan records are "impeccable."  (Gentilozzi Br. 1, 4, ECF No. 147.)

Viewing the evidence in the light most favorable to Plaintiff, the non-moving party, the Court concludes that there are material issues of fact for trial, and that the evidence is not so one-sided that Gentilozzi must prevail on the veil-piercing claim as a matter of law.

Accordingly, Gentilozzi's motion for partial summary judgment on the veil-piercing claim will be denied.

An order consistent with this opinion will be entered.


Dated: <u>February 19, 2015</u>                    /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE